WARWICK HOUSDEN, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Housden v. Commissioner
Docket No. 33163-88
United States Tax Court
T.C. Memo 1992-91; 1992 Tax Ct. Memo LEXIS 93; 63 T.C.M. (CCH) 2063; T.C.M. (RIA) 92091; February 13, 1992, Filed *93 Decision will be entered under Rule 155. Michael C. Solner, for petitioner. Michael E. Fernandez-Melone, for respondent. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6653(a)(1)
1980
$ 9,780
$ 2,445
$ 489
N/A
1981
11,912
2,978
$ 596
1982
9,850
2,463
493
1983
8,353
2,088
418
Additions to Tax
Year
Sec. 6653(a)(2)
Sec. 6656
1980
N/A
$   978
1981
[1]
1,192
1982
[1]
985
1983
[1]
835
The issues for decision are: (1) Whether petitioner, a resident alien of the United States, was required to deduct and withhold U.S. tax from alimony and separate maintenance payments to his former wives, nonresident aliens; (2) whether petitioner is liable for withholding tax at the source on interest payments to the Royal Bank of Canada, a nonresident company; (3) whether *94 petitioner is liable for additions to tax pursuant to sections 6653(a) [1] and 6653(a)(1) and (2) for negligence; (4) whether petitioner is liable for additions to tax pursuant to section 6651(a)(1) for failure to file tax returns; and (5) whether petitioner is liable for additions to tax pursuant to section 6656 for failure to make deposit of taxes. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts, together with the attached exhibits, are incorporated herein by this reference. During the years in issue, petitioner was a Canadian citizen and a resident alien of the United States. Petitioner's legal residence during the years 1980 through 1983 was Dallas, Texas. At the time the petition was filed, petitioner resided in Pacific Palisades, California. Petitioner *95 is a practicing architect licensed in England and Canada. In 1980, petitioner entered the United States to organize and operate W.Z.M.H. Group, Ltd., herein WZMH-USA, an architectural corporation. (The corporation was, in essence, a subdivision of W.Z.M.H. Group, a Canadian partnership.) WZMH-USA was operated in Dallas, Boston, Houston, and Newport Beach, each as a separate corporate entity. However, the accounting and the consolidation was conducted in Dallas, and banking for all the U.S. companies was conducted in Boston. Pauline Housden and Lynn Ann Housden, both Canadian citizens and nonresident aliens of the United States, are petitioner's former wives. In or about 1968, petitioner divorced Pauline Housden in Montreal, Canada, and was obligated to pay her alimony under its decree. In or about 1972, petitioner married Lynn Ann Housden and, 10 years after, he divorced her under Canadian law and was ordered to pay either alimony or separate maintenance. During the years in issue, petitioner paid his former wives alimony or separate maintenance in Canadian currency from a Canadian banking account. The total amount of alimony and separate maintenance payments, equivalent in *96 U.S. dollars, was $ 52,441 in 1980, $ 56,784 in 1981, $ 54,548 in 1982, and $ 54,541 in 1983. Petitioner claimed deductions for alimony and separate maintenance payments on his Federal income tax returns for the years in issue. However, he did not withhold any sums from the payments pursuant to section 871 (tax on nonresident alien individuals), nor did he file Form 1042S (Foreign Person's U.S. Source Income Subject to Withholding) or Form 1042 (Annual Withholding Tax Return for U.S. Source Income of Foreign Persons) for the years in issue. Concurrent with the alimony payments, petitioner made interest payments to the Royal Bank of Canada (hereinafter RBC), a foreign bank incorporated under the laws of Canada, for repayment of a personal loan. The amounts of the payments were $ 12,760 in 1980, $ 22,629 in 1981, $ 11,118 in 1982, and $ 1,144 in 1983. Petitioner did not withhold any sums from the payments to RBC, nor did he file any forms to qualify for exemption from withholding. Petitioner initially retained the accounting firm Deloitte, Haskins, and Sells (hereinafter Deloitte) to maintain both the corporate books and the personal books of some of the executives, since Deloitte *97 was the firm retained by all of the Canadian offices of W.Z.M.H. In or around 1982, petitioner changed accounting firms to Laventhal and Horwath, and was under the direct supervision of James Minczewski, a tax partner. Mr. Minczewski was responsible for the books and records of W.Z.M.H., as well as petitioner's personal records. In his notice of deficiency, respondent determined that petitioner was liable for withholding taxes on both the alimony and separate maintenance payments to his former wives and interest payments to RBC. Respondent asserts that petitioner's income was taxable at the source, i.e., the United States. Petitioner counters this argument by claiming that such an act would constitute double taxation; therefore, it is unconstitutional. OPINION Alimony Payments
The contention between the parties revolves around the applicability and constitutionality, as applied in this case, of section 1441. In pertinent part, section 1441(a) provides that "all persons" having control over certain "items of income * * * of any nonresident alien individual" shall deduct and withhold a tax [2] "to the extent that any of such items constitutes gross income from sources *98 within the United States". The items of income include "other fixed or determinable annual or periodical gains, profits, and income". Sec. 1441(b). Every person required to deduct and withhold any such tax is himself liable for such tax pursuant to section 1461. In Howkins v. Commissioner, 49 T.C. 689 (1968), [3] we held that the resident alien taxpayer was required to withhold income tax from alimony payments made to a nonresident alien former wife from his bank account maintained outside *99 of the United States. The decision was predicated upon the conclusions that: (1) Taxpayer had the requisite control over the amounts paid to the former wife, (2) the alimony payments were fixed or determinable annual or periodic income, and (3) the alimony represented income to the former wife. Thus, it is established that alimony payments qualify under sections 1441 and 871 when they are fixed and/or determinable annual or periodic income. [4] It is also established that the requisite control contemplated by the statute over the alimony payments made to former wives, nonresident aliens, is satisfied if made from an account maintained by a taxpayer, even if such account is located outside the United States. Thus, the alimony constituted income to the recipients (i.e., the former wives) "from sources within the United States" (the source being petitioner, a resident of the United States where the recipients' income was produced, rather than *100 the origin of the actual physical payment), and resulted in a deduction, as claimed, by petitioner. *101 During the years in issue, petitioner claimed a deduction on each of his U.S. Federal income tax returns for alimony paid to his former wives under section 215. Thus, by claiming such deduction, petitioner has effectively acknowledged that such income was taxable to them, since the underlying theory of section 215, which allows the deduction for the husband, is that the payments will be taxable in the hands of the wife. See Howkins v. Commissioner, supra, citing H. Rept. 2333, 77th Cong., 2d Sess. 46, 71-73 (1942); S. Rept. 1631, 77th Cong., 2d Sess. 83-86 (1942); 88 Cong. Rec. 6377 (1942). In this instance, the former wives are the taxpayers, not petitioner, since the alimony constitutes untaxed income in their hands. To the extent that the former wives may be subjected to double taxation, their remedy, if any, lies within Article XVI of the Convention and Protocol Between the United States of America and Canada Respecting Double Taxation (the Convention), March 4, 1942, United States-Canada, 56 Stat. 1399, T.S. No. 983. In pertinent part, the Convention states: "Where a taxpayer shows proof that the action of the revenue authorities of the contracting *102 States has resulted in double taxation * * * he shall be entitled to lodge a claim with the State of which he is a citizen or resident". (Emphasis added.) Here, both former wives are nonresident aliens; thus, their remedy is outside the United States. Consequently, this case does not present a constitutional dilemma for petitioner since he, himself, was never subjected to double taxation. Accordingly, we uphold respondent's findings in his notice of deficiency. Interest Payments to Royal Bank of Canada
Section 881(a)(1) imposes a tax on the amount received from sources within the United States by a foreign corporation as interest and other fixed or determinable annual or periodical gains, profits, or income. Section 1441(a) places a duty on all persons having the control, receipt, custody, disposal, or payment of any such income items as specified in section 871(a)(1) of any nonresident alien to withhold tax on such income items. The home base of the payor, rather than the place of payment or location of the debt instrument, is the critical factor in determining the source of interest. Hellawell & Pugh, Taxation of Transnational Transactions, par. 1308, at 81 *103 (1987). The question for decision is whether petitioner is responsible for withholding tax at the source on interest payments to the Royal Bank of Canada, a nonresident company. Petitioner borrowed money from the bank to make personal investments prior to and during the tax years in issue. Petitioner made the payments via a check drawn on his Canadian account. As discussed above in the alimony and separate maintenance payments section, petitioner possessed the criteria to be found responsible under section 1441 for withholding tax from RBC's interest income: (1) Petitioner had complete control over the amounts paid to RBC; (2) the payments were fixed or determinable annual or periodic gains, profits and income; and (3) the interest represented income to RBC "from sources within the United States". Notwithstanding, section 1441(c) provides that no withholding is required on any income item which is effectively connected with the conduct of a trade or business within the United States and which is included in the recipient's gross income under section 871(b)(2). [5]
*104 In order for section 1441(c) to apply, the regulations require that "the person entitled to the income must file with the withholding agent a statement [showing certain information] * * *. * * * for each taxable year of the person entitled to the income, and before payment of the income in respect of which it applies." Sec. 1.1441-4(a)(2), Income Tax Regs. A properly executed Form 4224 satisfies the requirement of this regulation. Since RBC failed to file Form 4224 for any of the years at issue, thus failing to meet the requirement for exception under section 1441(c), we hold that petitioner was responsible for withholding tax as outlined in section 881(a). Consequently, we uphold respondent's findings. Additions To Tax
Sections 6653(a), 6653(a)(1) and (2)
If any part of any underpayment is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. In addition for tax years after 1980, there shall be added to the tax an amount equal to 50 percent of the interest payable under section 6601. The burden of proof is upon petitioner. Courtney v. Commissioner, 28 T.C. 658, 669 (1957). *105 Petitioner was a foreign national unfamiliar with the U.S. tax system. Consequently, for all the years in issue, petitioner's income taxes were prepared by the national American accounting firms of Deloitte in 1980, and Laventhal and Horwath in 1981 through 1983. Petitioner made full disclosure to both firms of his obligations under his divorce decrees and to RBC. The accountants, who also maintained the books for petitioner's corporation, were experts in their field with knowledge of "cross border" transactions. Deloitte also maintained the books for all of the Canadian offices. Mr. Minczewski, tax partner for Laventhal and Horwath, testified that he was aware in 1981 of the fact that petitioner was a resident alien making alimony payments to two former nonresident alien wives and his interest obligations to RBC. He was also aware of the existing 1942 tax treaty between the United States and Canada. Mr. Minczewski believed and so advised petitioner during the years in issue that he was not responsible for withholding taxes to either his wives or RBC. He testified: The Court: * * * The question, I think, that I'm interested in is: Did you tell Mr. Housden? I'm understanding *106 that you did not tell Mr. Housden he had a requirement to withhold this money when he came to you to have his income tax -- The Witness: That's correct. I did not tell him that.
It was not until after respondent raised the issue of such payments and filings on audit that Mr. Minczewski advised petitioner that he may be responsible for withholding tax from both payments. It is well documented in the record that petitioner relied upon the advice of his accountants. Under the circumstances of this case, we find petitioner's reliance on his accountants to be in good faith. See Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968); Haynes v. Commissioner, T.C. Memo. 1990-135. Accordingly, we find petitioner is not liable for additions to tax under this section. Section 6651(a)(1)
This section provides an addition for failure to file a tax return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The aggregate amount of this addition is 25 percent of the amount of tax due. Advice of reputable counsel that a taxpayer was not liable for the tax has been held to constitute reasonable *107 cause for failure to file on time where the taxpayer exercised ordinary business care and prudence and made full disclosure of all relevant and material facts to such person. The failure to file a return on the advice of counsel cannot be said to have been due to willful neglect. United States v. Boyle, 469 U.S. 241 (1985); Estate of Paxton v. Commissioner, 86 T.C. 785, 819 (1986). See also Aiken Industries, Inc. v. Commissioner, 56 T.C. 925 (1971); C.R. Lindback Foundation, 4 T.C. 652, 667 (1945); Burruss Land and Lumber Co. v. United States, 349 F. Supp. 188 (1972). As stated in Boyle: When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. * * * To require the taxpayer to challenge the attorney, or seek a "second opinion," * * * would nullify the very purpose of seeking the advice of a presumed expert in the first place. * * * "Ordinary business care and prudence" does not demand such actions. [469 U.S. at 251. Citation omitted.]
*108 Accordingly, petitioner is not liable for additions to tax under this section. Section 6656
Not unlike section 6651(a)(1), section 6656 imposes a 10-percent addition for failure to deposit the withheld taxes on the date prescribed, unless it is shown that such failure was due to reasonable cause and not willful neglect. Likewise, the advice of reputable counsel that a taxpayer was not liable for the tax has been held to constitute reasonable cause for failure to pay on time under section 6656 where the taxpayer exercised ordinary business care and prudence and made full disclosure of all relevant and material facts to such person. Burruss Land and Lumber Co. v. United States, supra. For the reasons outlined above, we find petitioner is not liable for the addition to tax under this section. In summary, we hold petitioner was required to deduct and withhold tax at the source from alimony and separate maintenance payments to his former wives, nonresident aliens. Likewise, he was required to withhold tax at the source on interest payments to the Royal Bank of Canada, a nonresident corporation. Petitioner is not liable for any additions to tax under *109 sections 6653(a), 6651(a)(1), and 6656 since his reliance upon the advice of his accountants represented reasonable cause. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 871 provides: SEC. 871. TAX ON NONRESIDENT ALIEN INDIVIDUALS (a) Income Not Connected With the United States Business - 30 Percent Tax - 1) Income other than capital gains - a tax of 30 percent of the amount received from sources within the United States by a nonresident alien individual as - (A) Interest * * *, dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other fixed or determinable annual or periodical gains, profits, and income.↩
3. See also Lamm v. Commissioner, T.C. Memo. 1975-95↩.
4. A 1980 United States-Canada tax treaty provides "Alimony and other similar amounts" arising in one country and paid to a resident of the other country are taxable only in the other country. However, the 1980 treaty took effect with respect to alimony and other similar payments "on or after the first day of the second month next following the date on which the Convention enters into force". (Emphasis added.) Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital, Sept. 26, 1980, Art. XVIII, par. 6, Art. XXX, par. 2(a), T.I.A.S. No. 11,087, 1986-2 C.B. 258, 265, 269-270 (entered into force Aug. 16, 1984), as amended by protocol, June 14, 1983, Art. IX, par. 3, 1986-2 C.B. 270, 272, and by second protocol, Mar. 28, 1984, 1986-2 C.B. 274. Thus, the amended parts of the 1980 Convention, which apply to alimony payments, do not apply to the tax years in issue, 1980-83, since the treaty did not enter into force↩ until tax year 1984.
5. This section provides that a nonresident engaged in a trade or business in the United States shall be taxed as outlined in secs. 1, 55, or 402(e)(1) on his taxable income which is effectively connected with the conduct of a trade or business within the United States.↩